**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AARON D. SIMS, | ) | |
| Plaintiff; | ) | Case No. |
| | ) | |
| | ) | |
| v. | ) | Judge: |
| | ) | |
| | ) | Magistrate Judge: |
| ASSOCIATED BANC-CORP; and | ) | |
| DOUGLAS VITEK, | ) | |
| Defendants | ) | Jury Trial Requested |
| | ) | |

## COMPLAINT

NOW COMES Plaintiff, AARON D. SIMS ("Plaintiff"), by and through his attorneys, Henderson Parks, LLC, complaining of Defendants, ASSOCIATED BANC-CORP and DOUGLAS VITEK ("Defendants"), and hereby states as follows:

## NATURE OF THE ACTION

1.     This is an employment action brought under 42 U.S.C. § 1981(a) to correct the real and intentional acts of race discrimination carried out against Plaintiff by the Defendants.

## JURISDICTION AND VENUE

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action arising under the Constitution or laws of the United States.

3.     The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

4.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), because the unlawful conduct alleged herein was committed within the boundaries of the Northern District of Illinois.

## PARTIES

5.      Plaintiff AARON SIMS is a Black man and a resident of the Northern District of Illinois.

6.      Defendant ASSOCIATED BANC-CORP (herein "Associated" or "Bank") is a Wisconsin corporation headquartered in Green Bay, Wisconsin.

7.      ASSOCIATED does business in a three-state footprint of Wisconsin, Illinois, and Minnesota.

8.      Within its three-state footprint, ASSOCIATED operates a banking facility at 525 West Monroe Street, Chicago, Illinois 60661.

9.      Defendant DOUGLAS VITEK, at all times relevant to this Complaint, was employed as a segment leader and head of business development within the Asset Based Lending ("ABL") group at ASSOCIATED.

10.     VITEK's primary work location is at 45 South 7th Street, Minneapolis, Minnesota 55402.

## ALLEGATIONS

11.     Mr. Sims started his employment with ASSOCIATED on May 18, 2015.

12.     Mr. Sims's office at ASSOCIATED was located at 525 West Monroe Street.

13.     Mr. Sims was hired as a Senior Vice President, Business Development Officer / Senior Relationship Manager in the ABL group reporting to VITEK.

14.     Mr. Sims's starting salary was $130,000 annually with a $15,000 signing bonus, paid time off, incentive plan, health and welfare benefits, and retirement savings.

15.     VITEK recruited Mr. Sims directly into the ABL group through misrepresentation and fraud.

2

16.     VITEK made specific promises to Mr. Sims that he could not keep or had no intention of keeping.

17.     VITEK's misrepresentations included, but were not limited to, the salary and bonuses Mr. Sims would earn; promises of specific authority and duties Mr. Sims would have within the ABL Group; and the commitment, viability and potential for success of the Bank in the ABL marketplace.

18.     Mr. Sims relied on the misrepresentations made by VITEK to his detriment in accepting ASSOCIATED's offer of employment.

19.     ASSOCIATED was not committed to the ABL business, did not have an appropriate risk profile to field and execute ABL deals and lacked the institutional knowledge to participate in ABL deals.

20.     As a result, the majority of the sophisticated and lucrative ABL deals Mr. Sims brought to ASSOCIATED were met with an unsophisticated and callow credit department.

21.     ASSOCIATED's inability to comprehend and participate in these sophisticated deals resulted in Mr. Sims's personal brand and reputation being tarnished among ABL lenders in the marketplace; the Turnaround Management and Commercial Finance communities; and the appraisal and legal communities that support ABL deals.

22.     Ultimately, VITEK deliberately interfered both with Mr. Sims's business relationships and employment relationship.

23.     One of the instances of deliberate interference occurred during the preliminary stages of an overview performed on the Heckler & Koch Group ("H&K") business opportunity.

24.     KPMG brought the potential H&K deal to Mr. Sims's attention, and VITEK directed Mr. Sims to begin gathering general information about the deal.

25. VITEK also directed Mr. Sims to discuss the deal with an additional ASSOCIATED employee in a separate division of the bank.

26. VITEK then directed Mr. Sims to provide an initial overview of the H&K deal.

27. This overview was not due diligence on H&K nor was it a credit analysis on the H&K deal.

28. ASSOCIATED was not subjected to any detriment, financial risk nor legal liability because of the overview presented by Mr. Sims on the H&K deal.

29. After receiving the overview presented by Mr. Sims, VITEK immediately decided to not move forward with the deal because of unsubstantiated claim found on a Wikipedia page.

30. After deciding not to move forward on the deal, VITEK reprimanded Mr. Sims for presenting an overview that did not include the unsubstantiated claims found on the Wikipedia page.

31. VITEK, however, knew of the unsubstantiated claim prior to authorizing Mr. Sims to prepare the initial overview of the H&K deal.

32. Consistent with his prior knowledge, in his reprimand of Mr. Sims, VITEK acknowledged that the unsubstantiated claim found on the Wikipedia page was widely known because it was easily found via a simple search of H&K via the search engine Google.

33. In response to this reprimand, Mr. Sims stated the obvious to VITEK: any information found on any Wikipedia page is unreliable.

34. In addition, Mr. Sims made clear to VITEK that he had already researched the unsubstantiated claims and found them to be indeed unsubstantiated which is why the unsubstantiated claims did not make it into the initial overview.

35.     Nonetheless, VITEK summarily terminated Mr. Sims with no severance package on April 12, 2017 all because of an unsubstantiated claim on a Wikipedia page that was researched and confirmed to be unsubstantiated.

36.     Prior to the H&K deal, Mr. Sims had never received a bad or even mediocre performance review at ASSOCIATED.

37.     Mr. Sims was consistently rated as a "Solid Performance" on his performance reviews.

38.     Under ASSOCIATED's employee rating system, a Solid Performance meant that Mr. Sims consistently met the expectations of the job responsibilities and goals, and Mr. Sims delivered quality results which met expected job responsibilities.

39.     Prior to the H&K deal, Mr. Sims was never reprimanded nor disciplined during his tenure at ASSOCIATED nor was he ever placed on "Corrective Action" or a "Performance Improvement Plan".

40.     During his tenure on the ABL team, Mr. Sims's economic contribution to the ABL group was as high as any other members of the ABL team.

41.     During his tenure on the ABL team, VITEK consistently gave Mr. Sims praise and recognize for his marketing efforts in getting ASSOCIATED known in the ABL market place and for fielding several viable ABL opportunities to ASSOCIATED.

42.     VITEK also acknowledged to Mr. Sims that more of Mr. Sims's deals would have gone through had ASSOCIATED had better institutional knowledge of the ABL marketplace and stronger commitment to the ABL business.

43. The proper analysis for disparate treatment claims is done be removing the distinction between direct and indirect evidence. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 763-64 (7th Cir. 2016).

44. Instead of evaluating direct and indirect evidence, a Court must evaluate all evidence in the context of a single question: whether a reasonable jury could conclude that Mr. Sims would have suffered from the adverse actions at issue if he had been a different race and everything else had remained the same. *Ortiz*, 834 F.3d at 764.

45. All things being equal, if ASSOCIATED takes an action against Mr. Sims, who is in a protected class, but does not take the same action against another employee outside that class a finder of fact can infer discrimination.

46. Mr. Sims is a member of a protected class because he is a Black man.

47. During his time at ASSOCIATED, Mr. Sims met the legitimate business expectations of ASSOCIATED.

48. Despite his performance, Mr. Sims suffered two adverse employment actions: (1) his was wrongfully terminated and (2) was not offered a severance package upon his termination.

49. Similarly-situated, non-Black employees throughout ASSOCIATED BANK have been terminated, but still received severance packages.

50. Similarly-situated, non-Black employees throughout ASSOCIATED BANK have been provided a performance improvement plan rather than immediate termination in response to identified, legitimate performance issues.

51. Similarly-situated, non-Black employees who were supervised by VITEK while at ASSOCIATED have been terminated, but still received severance packages.

52.     Similarly-situated, non-Black employees who were supervised by VITEK while at ASSOCIATED have been provided a performance improvement plan rather than immediate termination in response to identified, legitimate performance issues.

53.     Similarly-situated, non-Black employers of ASSOCIATED both under VITEK's supervision and otherwise have performed their duties in a much more egregious and obviously deficient way in comparison to Mr. Sims and have not been summarily terminated.

54.     For all the reasons alleged, the proffered reasons for Mr. Sims's termination are a pretext for discrimination because VITEK's issues with Mr. Sims's judgment are wholly exaggerated and fabricated, and, even if taken as true, do not justify terminating Mr. Sims.

55.     The proffered reasons for Mr. Sims's termination are a pretext for discrimination because, in summarily terminating Mr. Sims, ASSOCIATED failed to follow its own internal procedures for progressive discipline and documentation when an employee is legitimately underperforming.

56.     The proffered reasons for Mr. Sims's termination are a pretext for discrimination because nothing offered in the initial overview presented on the H&K deal was so egregious that it required the immediate termination of Mr. Sims.

57.     Defendants' have yet to supply an explanation for their collective failure to provide Mr. Sims a severance package where similarly-situated, non-black employees have been offered severances under similar circumstances.

58.     During a routine follow up with contacts in the ABL community, Mr. Sims uncovered facts that lead him to the conclusion that his inability to source deals was due to the direct and intentional actions of Defendants.

59.     Many deals sourced by Mr. Sims that were rejected by Defendants for dubious reasons, such as unsubstantiated claims on a Wikipedia page, were immediately funded by direct competitors of ASSOCIATED.

60.     Defendant VITEK admitted to Mr. Sims that ASSOCIATED lacked the proper personnel in the credit department and lack the institutional knowledge to properly participate in the ABL marketplace.

61.     Mr. Sims has attempted to resolve the issues raised in this Complaint with Defendants prior to seeking redress via the federal court system.

62.     All prior efforts expended by Mr. Sims through counsel to resolve the issues raised in this Complaint have been rebuffed by Defendants.

## COUNT I
## DISCRIMINATION
## 42 U.S.C. § 1981
### (Against Defendant Associated Bank)

63.     Plaintiff re-alleges paragraphs 1 through 62 and incorporates them as if fully set forth herein.

64.     Defendant ASSOCIATED intentionally discriminated against Mr. Sims based on his race by treating Mr. Sims less favorably in comparison to similarly-situated non-Black employees

65.     Based on his race, Defendant ASSOCIATED intentionally deprived Mr. Sims of the same rights as are enjoyed by white citizens regarding the creation, performance, privilege and enjoyment of their contractual employment relationship with ASSOCIATED.

66.     Defendant ASSOCIATED has a duty and obligation to properly train, supervise, and discipline their employees to prevent them from violating the civil rights of others.

67.     Defendant ASSOCIATED has failed to properly train, supervise, and discipline Defendant VITEK.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.      declare that Defendant's conduct was in violation of Plaintiff's civil rights.

b.      enter preliminary and permanent relief enjoining the discriminatory conduct and preventing ongoing and future harm to Plaintiff;

c.      award Plaintiff the value of the compensation and benefits lost as a result of Defendants' unlawful conduct, including lost wages, back pay, front pay, and lost benefits, including, without limitation, the value of any lost benefits that would otherwise have been available to Plaintiff without the discrimination;

d.      award Plaintiff damages for emotional distress and compensatory damages;

e.      award Plaintiff punitive damages;

f.      award Plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees pursuant to 42. U.S.C. § 1988; and

g.      grant Plaintiff any further relief as this Court finds necessary and proper.

## COUNT II
## DISCRIMINATION
## 42 U.S.C. § 1981
### (against Defendant Vitek)

68.     Plaintiff re-alleges paragraphs 1 through 67 and incorporates them as if fully set forth herein.

69.     Defendant VITEK intentionally discriminated against Mr. Sims based on his race by treating Mr. Sims less favorably in comparison to similarly-situated non-Black employees.

70.     Based on his race, Defendant VITEK intentionally deprived Mr. Sims of the same rights as are enjoyed by white citizens regarding the creation, performance, privilege and enjoyment of their contractual employment relationship with ASSOCIATED.

71.     Defendant VITEK acted with malice and/or with reckless indifference to the civil rights of Mr. Sims.

72.     As a result of Defendant VITEK's intentional discrimination, Mr. Sims's suffered and continues to suffer anguish, humiliation, distress, inconvenience and loss of enjoyment of life.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.      declare that Defendant's conduct was in violation of Plaintiff's civil rights.

b.      enter preliminary and permanent relief enjoining the discriminatory conduct and preventing ongoing and future harm to Plaintiff;

c.      award Plaintiff the value of the compensation and benefits lost as a result of Defendant's unlawful conduct, including lost wages, back pay, front pay, and lost benefits, including, without limitation, the value of any lost benefits that would otherwise have been available to Plaintiff without the discrimination;

d.      award Plaintiff damages for emotional distress and compensatory damages;

e.      award Plaintiff punitive damages;

f.      award Plaintiff the costs of this action, including but not limited to the fees and costs of experts, together with reasonable attorneys' fees pursuant to 42. U.S.C. § 1988; and

g.      grant Plaintiff any further relief as this Court finds necessary and proper.

10

## COUNT III
## TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONSHIPS
### (against Defendant Vitek)

73.     Plaintiff re-alleges paragraphs 1 through 72 and incorporates them as if fully set forth herein.

74.     Mr. Sims had a reasonable expectation of forming a valid business relationship with his potential ABL clients.

75.     Mr. Sims's has compiled a list of specific and certain deals that were declined by ASSOCIATED under dubious and shifting reasons because of the intentional interference of Defendant VITEK. Each of those deals were immediately consummated at a direct competitor of ASSOCIATED.

76.     Defendant VITEK had, at all times relevant to this Complaint, substantial influence and even ultimate authority over which deals within the ABL were consummated.

77.     Mr. Sims had a reasonable expectation of maintaining his at-will employment relationship with his employer, ASSOCIATED.

78.     Defendant VITEK knew of Mr. Sims's expectancy of both forming business relationships with these prospective ABL clients and of maintaining his at-will employment relationship.

79.     Defendant VITEK held a unique position of authority over Mr. Sims's prospective business relationships and Mr. Sims's employment.

80.     Defendant VITEK abused his position, manufactured reasons for Mr. Sims's reprimand and instigated his termination from ASSOCIATED.

81.     Defendant VITEK purposefully interfered and prevented Mr. Sims's from forming and benefiting from his prospective business relationships.

11

82.     Defendant VITEK purposefully interfered and caused a breach in Mr. Sims's at-will employment relationship with ASSOCIATED.

83.     Defendant VITEK's interference with Ms. Sims's prospective and current business relationships was intentional, malicious and implemented with fraud and disparagement.

84.     As a result of Defendant VITEK's interference, Mr. Sims's suffered and continues to suffer damages in the form of lost wages, bonuses and future monetary gains and opportunity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

   a.  declare that Defendant's conduct was in violation of Illinois law;

   b.  award Plaintiff compensatory damages;

   c.  award Plaintiff emotional distress damages;

   d.  award Plaintiff punitive damages sufficient to serve a policy of deterrence;

   e.  award Plaintiff reasonable attorney's fees, costs, and disbursements; and,

   f.  award Plaintiff any and all other relief as this Court deems just.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (against Defendant Vitek)

85.     Plaintiff re-alleges paragraphs 1 through 84 and incorporates them as if fully set forth herein.

86.     Defendant VITEK held a unique position of authority over Mr. Sims's prospective business relationships and Mr. Sims's employment.

12

87.     Defendant VITEK abused his position of power to the emotional detriment of Mr. Sims.

88.     Defendant VITEK's conduct during Mr. Sims's tenure at Associated Bank was extreme and outrageous toward Mr. Sims's especially during the events leading to Mr. Sims's wrongful termination.

89.     Defendant VITEK's outrageous and extreme conduct caused Mr. Sims severe emotional distress.

90.     Defendant VITEK's outrageous and extreme conduct was intended to inflict emotion stress and distress on Mr. Sims, or, in the alternative, done with wanton disregard as to the amount of damage his conduct could inflict or with the knowledge that there was a high probability that his conduct would cause distress.

91.     As a result of Defendant VITEK's outrageous and extreme conduct, Mr. Sims suffered and continues to suffer damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.  declare that Defendant's conduct was in violation of Illinois law;

b.  award Plaintiff compensatory damages;

c.  award Plaintiff emotional distress damages;

d.  award Plaintiff punitive damages sufficient to serve a policy of deterrence;

e.  award Plaintiff reasonable attorney's fees, costs, and disbursements; and,

f.  award Plaintiff any and all other relief as this Court deems just.

## JURY TRIAL DEMAND

Plaintiff hereby requests a jury trial on all issues of fact and law raised by the allegations contained in this Complaint.

**DATED:**    September 1, 2017

Respectfully Submitted,

/s/ William C. Martin
 Attorney for Plaintiff

William C. Martin
**HENDERSON PARKS, LLC**
140 South Dearborn, Suite 1020
Chicago, IL 60603
Telephone: (312) 262-2900
Facsimile: (312) 262-2901